# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

HARRISON BROER, Individually and on
Behalf of all others similarly situated,

     Plaintiff,

v.                                              Case No.: 4:21-cv-328-AW-MAF

FLORIDA STATE UNIVERSITY
and FLORIDA STATE UNIVERSITY
BOARD OF TRUSTEES, as the public
body corporate of Florida State University,

     Defendant.

_____/


## PLAINTIFF'S OPPOSITION TO FLORIDA STATE UNIVERSITY BOARD OF TRUSTEES' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT <u>ON THE PLEADINGS</u>

## **TABLE OF CONTENTS**

Table of Contents………………………………………………………….…..i

Table of Authorities…………………………………………………...iii-viii

INTRODUCTION……………………………………………………………1

LEGAL STANDARD…..………………………………………………………5

   A. MOTION TO DISMISS………………………………………………..5

   B. MOTION FOR JUDGMENT ON THE PLEADINGS……………...……5

ARGUMENT…………………………………………………………………7

  I.    SOVERIGN IMMUNITY DOES NOT BAR BREACH OF
       CONTRACT (COUNT I) AND UNJUST ENRICHMENT
       (COUNT II) CLAIMS…………………………………………………7

      A. Plaintiff's State Law Claims Are Not Barred By Sovereign
         Immunity………………………………………………………..7

        *1.  Plaintiff's Breach of Contract Claim is Not Barred by
           Sovereign Immunity…………………………………….....7*

        *2.  Plaintiff's Unjust Enrichment Claim is Not Barred by
           Sovereign Immunity…………………………………......11*

      B. Express Contract May Contain Ambiguous Covenants
         Even with Express Obligations……………………………...14

      C. Plaintiff's Claims Are Not Barred By Florida Statutes……….…..19

        *1.  Section 1009.24 of the Florida Statues, Does Not Bar
           Plaintiff's Claim for Breach of Contract………………….19*

 II.   FEDERAL AND STATE "TAKINGS" CLAIMS ARE VALID,
      AND THE STUDENTS HAVE A PROTECTED PROPERTY
      INTEREST…………………………………………………………...22

A. Plaintiff's Property Interest in Tuition and Fees Paid to Defendants……………………………………………………..23

B. Plaintiff's Property Interest in Promised Educational Services…...…24

III.   THE VOLUNTARY PAYMENT DOCTRINE IS AN AFFIRMATIVE DEFENSE INAPPROPRIATE FOR A MOTION TO DISMISS…………………………………………...26

IV.   CLASS CLAIMS SHOULD NOT BE DISMISSED……………..…… 27

V.   CONCLUSION……………………………………...……………..27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................... 5

*Bankers Ins. Co. v. Florida Residential Prop. & Cas. Joint
    Underwriting Ass'n*,
    137 F.3d 1293 (11th Cir. 1998) ........................................................... 6

*Barnes v. Zaccari*,
    669 F.3d 1295 (11th Cir. 2012) ......................................................... 25

*Bd. of Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972)............................................................................. 24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2017)........................................................................ 5, 6

*Camm v. Scott*,
    834 F. Supp. 2d 1342 (M.D. Fla. 2011)............................................. 7

*Champagne-Webber v. City of Ft. Lauderdale*,
    519 So. 2d 696 (Fla. 4th DCA 1988)..................................... 8, 11, 21

*Charity v. Bd. of Regents of the Div. of Univs. Of the Fla. Dep't of Educ.*,
    698 So. 2d 907 (Fla. Dist. Ct. App. 1997) ........................................ 10

*Childers v. Fla. Gulf Coast Univ. Bd. of Trs.*,
    No. 2:15-cv-722-FtM-MRM,
    2017 U.S. Dist. LEXIS 48522 (M.D. Fla. Mar. 31, 2017) ............... 25

*Chiles v. United Faculty of Fla.*,
    615 So. 2d 671 (Fla. 1993) ............................................................... 21

*City of Key West v. Florida Keys Community College*
    81 So. 3d 494, 496, 498 (Fla. 3d DCA 2012).................................... 10

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013).........................................................................27

*Commerce P'ship 8098 Ltd. P'hip v. Equity Contracting Co., Inc.*,
    695 So. 2d 383 (Fla. Dist. Ct. App. 1997) ..................................... 9, 13

*County of Brevard v. Morelli Engineering, Inc.*,
    703 So. 2d 1049 (Fla. 1998) .......................................................... 8, 12

*Cox v. CSX Intermodal, Inc.*,
    732 So. 2d 1092 (Fla. 1st DCA 1999) ............................................17

*In re Diaz*,
    647 F.3d 1073 (11th Cir. 2011) ........................................................7

*Doe v. Emory Univ.*,
    Civil Action File No. 1:20-CV-2002-TWT,
    2021 U.S. Dist. LEXIS 22800 (N.D. Ga. Jan. 22, 2021)....................3

*First Nationwide Bank v. Fla. Software Servs., Inc.*,
    770 F. Supp. 1537 (M.D. Fla. 1991)................................................17

*Fla. Evergreen Foliage v. E.I. du Pont de Nemours & Co.*,
    165 F. Supp. 2d 1345 (S.D. Fla. 2001) .............................................6

*Gibson v. Lynn Univ.*,
    Case No. 20-CIV-81173-RAR,
    2021 U.S. Dist. LEXIS 54324 (S.D. Fla. Mar. 23, 2021)...................2

*Givens v. Alabama Dep't. of Corrections*,
    381 F.3d 1064 (11th Cir. 2004) ......................................................23

*Hall v Sargeant*,
    Case No. 18-80748-CIV-ALTMAN/Reinhart,
    2020 U.S. Dist. LEXIS 54724 (S.D. Fla. Mar. 30, 2020)..................17

*Herrera v. JFK Medical Center Ltd. Partnership*,
    648 F. App'x 930 (11th Cir. 2016) ..................................................27

*Hiatt v. Brigham Young Univ.*,
    No. 1:20-CV-00100-TS,
    2021 U.S. Dist. LEXIS 3269 (D. Utah Jan. 7, 2021)..........................3

*Holmes v. Univ. of Massachusetts*,
  No. 2084CV01025-B,
  2021 Mass. Super. LEXIS 11 (Mar. 8, 2021) (Sup. Ct. Suffolk
  Cnty. Cmlth. Mass Mar. 8, 2021) ....................................................................... 3

*Larance v. Bayh*,
  Cause No. 3: 94-CV-182RM,
  1995 WL 46718 (N.D. Ind. 1995) ...................................................................... 23

*Lee-Bolton v. Koppers Inc.*,
  No. 1:10-CV-253-SPM/GRJ,
  2012 U.S. Dist. LEXIS 191740 (N.D. Fla. Feb. 10, 2012) ................................. 5

*Liberty Surplus Ins. Corp. v. First Indem. Ins. Servs.*,
  31 So. 3d 852 (Fla. 4th DCA 2010) .................................................................. 26

*Malibu Media, LLC v. Roldan*,
  Case No: 8:13-cv-3007-T-30TBM,
  2014 WL 3805494 (M.D. Fla. Aug. 1, 2014) ...................................................... 5

*Maor v. Dollar Thrifty Auto. Grp.*,
  303 F. Supp. 3d 1320 (S.D. Fla. 2017) ............................................................. 26

*Marone v. Amf Offshore Racing*,
  CASE NO. 07-80284-CIV-JOHNSON,
  2007 U.S. Dist. LEXIS 112841 (S.D. Fla. Aug. 30, 2007) ................................. 6

*Metro. Dade Cty v. Chase Fed. Housing Corp.*,
  737 So. 2d 494 (Fla. 1999) ............................................................................... 21

*Moore v. The University of South Florida, Board of Trustees*,
  Case No. 21-CA-2445 (Fla. Cir. Ct. 2021) ....................................................... 11

*Nautica Int'l, Inc. v. Intermarine USA, L.P.*,
  5 F. Supp. 2d 1333 (S.D. Fla. 1998) ................................................................. 17

*New Hampshire Ins., Co. v. Flowers Ins. Agency, LLC*,
  2011 WL 1740135 (M.D. Ala. May 5, 2011) ..................................................... 10

*Ortega v. Christian*,
  85 F.3d 1521 (11th Cir. 1996) ............................................................... 6

*Pac. Mut. Life. Ins. Co. of Cal. V. McCaskill*,
  170 So. 579 (Fla. 1936) ...................................................................... 26

*Pan-Am Tobacco Corp. v. Dept. of Corrs.*,
  471 So.2d 4 (Fla. 1984) ..................................................................... 7, 8

*Parker v. Am. Traffic Solutions, Inc.*,
  No. 14-CIV-24010-MORENO,
  2015 U.S. Dist. LEXIS 105522 (S.D. Fla. Aug. 10, 2015) ............................... 12

*Perry v. Sindermann*,
  408 U.S. 593 (1972) .......................................................................... 25

*Phillips v. Washington Legal Found.*,
  524 U.S. 156 (1998) .......................................................................... 23

*Pudlit 2 Joint Venture, LLP v. Westwood Gardens Homeowners
  Ass'n, Inc.*,
  169 So. 3d 145 (Fla. Dist. Ct. App. 2015) ............................................... 21

*Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*,
  Case No: 6:20-cv-927-Orl-40EJK,
  2021 U.S. Dist. LEXIS 8047 (M.D. Fla. Jan. 14, 2021) ................................... 2

*Rojas, et al v. Florida Board of Governors*,
  No. 2020-CA-000846 (Fla. 2d Cir. Ct. Nov. 12, 2020) ................................... 3

*Rosado v. Barry Univ. Inc.*,
  499 F. Supp. 3d 1152 (S.D. Fla. 2020) .................................................... 2

*Sachse v. Tampa Music Co.*,
  262 So. 2d 17 (Fla. 2d DCA 1972) ........................................................ 10

*Salerno v. Fla. S. Coll.*,
  488 F. Supp. 3d 1211 (M.D. Fla. 2020) .................................................... 2

*Schojan v. Papa John's Intl Inc.*,
  34 F. Supp. 3d 1206 (M.D. Fla. 2014) .................................................... 26

*In re Univ. of Miami Covid-19 Tuition & Fee Refund Litig.*,
  No. 20-60851-CIV-SINGHAL,
  2021 U.S. Dist. LEXIS 42945 (S.D. Fla. Mar. 4, 2021) ..................................... 2

*Verdini v. Dist. Bd. of Trs. of Miami-Dade College*,
  Case No. 2020-17924-CA-44,
  2021 Fla. Cir. LEXIS 4 (Fla. 11th Cir. Ct. Feb. 1, 2021) ....................... 3, 20, 22

*W. Town Plaza Assocs. v. Citi Trends, Inc.*,
  2019 U.S. Dist. LEXIS 78755 (M.D. Fla. Mar. 26, 2019) ................................. 9

*Waite Dev., Inc. v. City of Milton*,
  866 So. 2d 153 (Fla. Dist. Ct. App. 2004) ..................................................... 9, 20

*Wilcox v. Atkins*,
  213 So. 2d 879 (Fla. 2d DCA 1968) ................................................................. 17

*Williams v. Corp. of Mercer Univ.*,
  Case No.: 5:20-CV-361 (LAG),
  2021 U.S. Dist. LEXIS 107573 (M.D. Ga. June 7, 2021) ................................... 3

*Williams v. Florida State University Board of Trustees*
  No. 4:11cv350-MW/CAS,
  2013 U.S. Dist. LEXIS 184486 (N.D. Fla. Dec. 16, 2013) .............................. 10

*Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*,
  No. 8:16-cv-637-T-30TGW,
  2016 U.S. Dist. LEXIS 49730 (M.D. Fla. Apr. 13, 2016).................................. 8

**Statutes**

20 U.S.C. §§ 1070-1099 (1990 & 1992 Supp.) ....................................................... 24

42 U.S.C. § 1983 ....................................................................................................... 22

Fed. R. Civ. P. 12(c) ................................................................................................... 5

Federal Rule of Civil Procedure 8(a)(2) ..................................................................... 5

Fla. Stat. § 768.39 ..................................................................................................... 21

Florida Statute Title XLVIII, Chapter 1011 ............................................................ 14

Florida Statutes Section 1009.24 ........................................................ 19, 21

Higher Education Act of 1965 ................................................................. 24

Plaintiff Harrison Broer ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss, or in the alternative, motion for Judgment on the Pleadings ("MTD" or "Motion to Dismiss") (D.E. 11) filed by the Florida State University ("FSU") and Florida State University Board of Trustees ("FBOT") (collectively, the "Defendants"). As explained herein, Defendants' Motion to Dismiss should be denied in its entirety.

## INTRODUCTION

This action arises out of Defendants' response to the novel coronavirus disease 2019 (COVID-19). Specifically, it arises from Defendants' decision to retain the full amount of students' fee payments for tuition and other services despite not providing them with the in-person and on-campus services that Plaintiff was offered, bargained for, contracted for, and paid for.

Plaintiff was a student at the Florida State College of Law during the Spring 2020 semester. Defendants charged Plaintiff fees of approximately $11,044.76 for tuition, plus fees for other services for the Spring 2020 semester. Plaintiff made these payments pursuant to his contractual agreement with Defendants to receive in-person and on-campus educational services, experiences, and opportunities as detailed in the offers Defendants made to him in their application materials, admissions materials, enrollment materials, and registration materials, including marketing, advertisements, and other public representations. On or about March 11,

2020, Defendants announced that in-person and on-campus education and services would be suspended for at least two weeks.   On March 17, 2020, Defendants announced that the FSU would remain online for the remainder of the Spring 2020 semester.   Thus, for a material portion of the Spring 2020 semester, Defendants failed to provide the in-person and on-campus educational experiences, services, facilities, or opportunities that Plaintiff and his fellow students bargained for, contracted for, and paid for. Despite not providing the services Plaintiff paid Defendants to provide, Defendants retained the entirety of the fees paid at the end of the semester without any refund or discount.   Because Defendant retained these payments without adequately providing the contracted services, Plaintiff and the putative class are entitled to a pro-rata refund of the fees they paid for tuition and other services.   Defendants move to dismiss Plaintiff's complaint in its entirety—a motion courts nationwide, including courts within the 11th Circuit and Florida, have rejected on similar facts.   *See, e.g.*, *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152 (S.D. Fla. 2020); *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211 (M.D. Fla. 2020); *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, Case No: 6:20-cv-927-Orl-40EJK, 2021 U.S. Dist. LEXIS 8047 (M.D. Fla. Jan. 14, 2021); *Gibson v. Lynn Univ.*, Case No. 20-CIV-81173-RAR, 2021 U.S. Dist. LEXIS 54324 (S.D. Fla. Mar. 23, 2021) (denying motion to dismiss and/or strike class action allegations); *In re Univ. of Miami Covid-19 Tuition & Fee Refund Litig.*, No. 20-60851-CIV-SINGHAL, 2021 U.S. Dist. LEXIS 42945

(S.D. Fla. Mar. 4, 2021) (denying, in part, motion to dismiss); *Rojas, et al v. Florida Board of Governors*, No. 2020-CA-000846 (Fla. 2d Cir. Ct. Nov. 12, 2020); *Verdini v. Dist. Bd. of Trs. of Miami-Dade College*, Case No. 2020-17924-CA-44, 2021 Fla. Cir. LEXIS 4 (Fla. 11th Cir. Ct. Feb. 1, 2021); *Williams v. Corp. of Mercer Univ.*, Case No.: 5:20-CV-361 (LAG), 2021 U.S. Dist. LEXIS 107573 (M.D. Ga. June 7, 2021); *Doe v. Emory Univ.*, Civil Action File No. 1:20-CV-2002-TWT, 2021 U.S. Dist. LEXIS 22800 (N.D. Ga. Jan. 22, 2021); *Holmes v. Univ. of Massachusetts,* No. 2084CV01025-B, 2021 Mass. Super. LEXIS 11 (Mar. 8, 2021) (Sup. Ct. Suffolk Cnty. Cmlth. Mass Mar. 8, 2021) (denying motion to dismiss); *Hiatt v. Brigham Young Univ.*, No. 1:20-CV-00100-TS, 2021 U.S. Dist. LEXIS 3269 (D. Utah Jan. 7, 2021).

Defendants attempt to dismiss Plaintiff's well-plead complaint, primarily based on sovereign immunity.  For example, Defendants argue sovereign immunity shields them from liability as Plaintiff has not adequately plead that the parties entered into an express contract, which entitled Plaintiff and his fellow students to in-person and on-campus educational services, despite paying thousands of dollars a semester for precisely that.  Defendants disregard the sheer number of documents it supplied to Plaintiff, including but not limited to, Plaintiff's application, acceptance, and registration documents, that create an express agreement. Additionally, Defendants ignore well-founded case law in Florida that express

contracts may contain implied covenants or ambiguous terms that are held to be integral terms of an express contract, on par with the written words.  The marketing materials and advertisements Defendants send directly to every applicant and make publicly available promised students an on-campus and in-person educational experience and services, and these are material terms of the express agreement Plaintiff and his fellow class members made with Defendants when deciding to attend FSU by paying thousands of dollars each semester.

However phrased, Defendants' arguments, if accepted, would be no less than *carte blanche* for colleges and universities to do as they please, when they please, with the fees their students paid for tuition and other services so long as they disclaim any responsibility for their actions and the harm those actions visit upon others.  This is not the law. The gravamen of this action is that Defendants provided materially different services from what Plaintiff pre-paid for, and what was promised to Plaintiff.  Therefore, due to this difference, Plaintiff is entitled to a partial refund under Florida contract law.  As set forth below, Plaintiff has stated a claim for breach of contract, or in the alternative, for unjust enrichment, as well as inverse condemnation, and thus the instant motion should be denied in its entirety.

## LEGAL STANDARD

### A.   MOTION TO DISMISS

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2017) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To meet this 'plausibility standard,' a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Malibu Media, LLC v. Roldan*, Case No: 8:13-cv-3007-T-30TBM, 2014 WL 3805494, at *1 (M.D. Fla. Aug. 1, 2014). This "threshold of sufficiency" is "exceedingly low." *Lee-Bolton v. Koppers Inc.*, No. 1:10-CV-253-SPM/GRJ, 2012 U.S. Dist. LEXIS 191740, *9 (N.D. Fla. Feb. 10, 2012). "When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable and take the factual allegations therein as true." *Malibu Media, LLC*, 2014 WL 3805494, at *1.

### B.   MOTION FOR JUDGMENT ON THE PLEADINGS

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment

on the pleadings is proper "when no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996). Indeed, "[i]t is appropriate for a district court to grant a motion for judgment on the pleadings when there are no disputed issues of material fact and 'judgment can be rendered by looking at the substance of the pleadings and any judicially noticed facts.'" *Marone v. Amf Offshore Racing*, CASE NO. 07-80284-CIV-JOHNSON, 2007 U.S. Dist. LEXIS 112841, at *8 (S.D. Fla. Aug. 30, 2007) (quoting *Bankers Ins. Co. v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998) (citations omitted). When determining a motion for judgment on the pleadings, a court must "take the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Fla. Evergreen Foliage v. E.I. du Pont de Nemours & Co.*, 165 F. Supp. 2d 1345 (S.D. Fla. 2001) (citing *Ortega*, 85 F.3d at 1524). The non-movant is entitled to relief if they allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

//

//

//

## ARGUMENT

I. **SOVEREIGN IMMUNITY DOES NOT BAR BREACH OF CONTRACT (COUNT I) AND UNJUST ENRICHMENT (COUNT II) CLAIMS**

    A. **Plaintiff's State Law Claims Are Not Barred By Sovereign Immunity**

        *1. Plaintiff's Breach of Contract Claim is Not Barred by Sovereign Immunity*

Defendants contend that, as part of the executive branch of the State, the State University System of Florida is protected by sovereign immunity. But "State sovereign immunity is not absolute . . . ." *In re Diaz*, 647 F.3d 1073, 1082 (11th Cir. 2011). State sovereign immunity does not apply when a state waives its immunity for certain types of claims – as the State of Florida has done for the claims asserted here. *See Camm v. Scott*, 834 F. Supp. 2d 1342, 1347 (M.D. Fla. 2011) (describing the exceptions to sovereign immunity). The Florida Supreme Court holds that "where [a] state has entered into a contract fairly authorized by the powers granted by general law; the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." *Pan-Am Tobacco Corp. v. Dept. of Corrs.*, 471 So.2d 4, 5 (Fla. 1984).

Defendants concede that the State has waived its immunity from suits arising out of contract, but Defendants incorrectly contend that the waiver applies only to express contracts with express covenants. MTD at 14-15. The waiver exception for

contract actions extends beyond the limit Defendants seek to impose.   In *Champagne-Webber v. City of Ft. Lauderdale*, 519 So. 2d 696, 697 (Fla. 4th DCA 1988), the Fourth District Court of Appeal considered *Pan-Am* and found that the defense of sovereign immunity does not protect the state agency from an action arising out of a breach of an *implied covenant* or condition of the contract.  *Id*. at 698.[1]  The Florida Supreme Court subsequently approved the *Champagne-Webber* Court's interpretation of *Pan-Am*.  *See County of Brevard v. Morelli Engineering, Inc.*, 703 So. 2d 1049, 1051 (Fla. 1998).  Accordingly, Florida has waived sovereign immunity with regard not only to express contracts but also to the implied terms within such contracts.

Although Defendants attempt to rewrite Plaintiff's allegations, Plaintiff has alleged an express written contract between Defendants and their students – namely one that required Plaintiff to provide payment of fees for tuition and other services (expressly written in several documents) and Defendants to provide in-person and on-campus educational services (expressly described and conveyed in numerous documents and materials).  Express contracts may be oral or written, as long as the

---

[1]    *See Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, No. 8:16-cv-637-T-30TGW, 2016 U.S. Dist. LEXIS 49730, *8 (M.D. Fla. Apr. 13, 2016) (denying motion to dismiss breach of contract claim against university based on sovereign immunity because plaintiff alleged that it "entered into a contractual relationship with the University of South Florida,' one in which '[s]ome terms . . . [were] contained within the University of South Florida College of Medicine Medical Student Handbook.'  This factual pleading is sufficient to survive a motion to dismiss.  Whether the allegation will be supported by evidence is a question for summary judgment.").

agreement is arrived at by words. *See Commerce P'ship 8098 Ltd. P'hip v. Equity Contracting Co., Inc*., 695 So. 2d 383 (Fla. Dist. Ct. App. 1997); *Waite Dev., Inc. v. City of Milton*, 866 So. 2d 153, 155 (Fla. Dist. Ct. App. 2004) (reversing order dismissing claim against City based on sovereign immunity defense finding that "[s]everal writings may constitute a valid and binding written contract"). In contrast, an implied-in-fact contract is one "based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *Commerce P'ship 8098 Ltd. P'ship*, 695 So. 2d at 385. Plaintiff entered into an express contract with Defendants to attend FSU, detailed through the application process, offers of acceptance, and provisions with which Plaintiff had to comply with to attend FSU. Additionally, the same express contract entered into by the parties contain implied covenants to provide in-person and on-campus education and services. ¶¶43-63, 85-106.[2]

The existence and scope of an express contract is a question of fact. *See W. Town Plaza Assocs. v. Citi Trends, Inc*., 2019 U.S. Dist. LEXIS 78755, at *19 (M.D. Fla. Mar. 26, 2019) ("issue of the existence of a contract is a question of fact")

---

[2]     All references to "¶" are to the First Amended Class Action Complaint ("Complaint") filed July 30, 2021 in the Circuit Court of the Second Judicial Circuit for Leon County, Florida.

(quoting *New Hampshire Ins., Co. v. Flowers Ins. Agency, LLC*, 2011 WL 1740135, at *12 (M.D. Ala. May 5, 2011) (citations omitted).[3]

The cases relied on by Defendants are inapposite and factually distinct.  In *City of Key West v. Florida Keys Community College*, there was no express agreement or any written agreement between the parties, nor was one alleged. Instead, the city argued that the community college waived sovereign immunity with respect to the city's storm water utility fees.  81 So. 3d 494, 496, 498 (Fla. 3d DCA 2012).  Similarly, in *Williams v. Florida State University Board of Trustees*, there was no evidence of an express or written contract, and thus, sovereign immunity barred the plaintiff's claims.   Case No. 4:11cv350-MW/CAS, 2013 U.S. Dist. LEXIS 184486 (N.D. Fla. Dec. 16, 2013); *see also Charity v. Bd. of Regents of the Div. of Univs. Of the Fla. Dep't of Educ.*, 698 So. 2d 907 (Fla. Dist. Ct. App. 1997) (plaintiff failed to allege an express contract).

---

[3]     Defendants argue that "[Plaintiff] has not attached the express contract guaranteeing him the return of student fees and tuition in the event virtual instruction is substituted for in-person instruction for any reason."  MTD at 6.  While attaching these contracts is sufficient, there might be enrollment agreements that Plaintiff and all other students signed, and that FSU solely possesses, which contain operative language regarding the fees at issue and the responsibilities of the parties, and due to FSU's sole possession, excuses compliance with the rule requiring plaintiffs to attach a copy of the contract at issue.  *See Sachse v. Tampa Music Co.*, 262 So. 2d 17, 19 (Fla. 2d DCA 1972) (citation omitted) ("Failure to attach a copy of the instrument upon which the action is brought may result in dismissal of the case.  But where the instrument is not within the pleader's possession or control, as alleged here, such failure to attach should not be fatal to the cause, and the pleader should be given an opportunity, by means of discovery proceedings, to establish the existence of the instrument.").

Simply put, Plaintiff has alleged an express written contract promising in-person and on-campus services, learning, and activities.   ¶¶ 59-60.   Defendants cannot invoke sovereign immunity to escape liability to contract claims simply by denying that an express contract was formed with their students.   *See Moore v. The University of South Florida, Board of Trustees*, Case No. 21-CA-2445 (Fla. Cir. Ct. 2021), Transcript of the Hearing on Defendant's Motion to Dismiss, dated July 22, 2021, before the Honorable Darren D. Farfante at 32:25 – 33:1-25 (denying the motion to dismiss as to sovereign immunity argument regarding fees). *See* Exhibit A to the Declaration of Gregory M. Egleston.

To the extent the Court agrees with Defendants that Plaintiff has not adequately pled the existence of an express contract between the parties, Plaintiff respectfully requests the opportunity to amend the Complaint as this is the first complaint reviewed by any judicial officer in this action.

### 2.  *Plaintiff's Unjust Enrichment Claim is Not Barred by Sovereign Immunity*

As with the breach of contract claim, Defendants attempt to shield themselves from Plaintiff's unjust enrichment claim because it is not a tort or express contract. MTD at 16-19.   But, as set forth above, the State's waiver of sovereign immunity for contract claims includes implied covenants and implied terms and conditions. *See Champagne-Webber*, 519 So. 2d at 697-98.

11

In *County of Brevard v. Miorelli Eng'g*, Florida's Supreme Court held, a claim for damages predicated on work "totally outside the terms of the contract" is barred by the doctrine of sovereign immunity, whereas damages caused by extra work done at the State's behest and in furtherance of the contractual covenants (express or implied) are potentially recoverable.   703 So. 2d 1049, 1051 (Fla. 1997). Accordingly, the Defendants' wrongful retention of Plaintiff's fees paid for tuition and other services violated the implied covenants of their express contracts with their students, which prohibits the dismissal of the unjust enrichment claim under sovereign immunity.

If the unjust enrichment claim is not included in the State's waiver of sovereign immunity, Plaintiff's unjust enrichment claim nonetheless survives dismissal because it is an unlawful monetary extraction.  In *Parker v. Am. Traffic Solutions, Inc*., No. 14-CIV-24010-MORENO, 2015 U.S. Dist. LEXIS 105522 (S.D. Fla. Aug. 10, 2015), the plaintiffs filed suit against local governments for unjust enrichment based on unlawful red-light ticketing programs. *Id*., at *15.  The *Parker* defendants moved to dismiss the claim under sovereign immunity, arguing that they did not waive sovereign immunity because unjust enrichment was neither a violation of an express contract nor a tort.  *Id*., at *22.  The court disagreed, holding that "under Florida law, state actors are not immune from suit for unlawful monetary extractions. Unjust enrichment is not a tort in the traditional sense, but it is a tool created by

courts to provide a remedy for parties that have been unfairly deprived of their property." *Id*., at *23 (citing *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co*., 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997)).  In the present case, Defendants are guilty of such an "unlawful extraction" insofar as the Complaint alleges they retained Plaintiff's fees paid for tuition and other services despite failing to provide the promised educational services.  ¶ 138.

Plaintiff's claim of unjust enrichment via unlawful extraction is further supported by documents produced by Plaintiff's initial Freedom of Information Act requests, including transcripts from meetings between Florida universities regarding their response to COVID-19.  *See* Exhibit D to the Complaint (CAFA Minutes). During a meeting of the Council for Administrative and Financial Affairs ("CAFA"), on March 26, 2020, a representative from Florida A&M University admitted the school was making more money than it typically would by charging fees for face-to-face classes while only providing less costly online courses.[4]  Additionally, the Defendants considered using "carryforward" funds from their state operating funds to provide refunds for tuition and fees for the Spring 2020 semester.  However, they

---

[4]     CAFA Conference Call, March 26, 2020, at 8:00 AM (attached as Exhibit D to the Complaint) ("FAMU -- Can I ask a question about the summer and technology fee? These classes were originally scheduled to take place face to face, correct? Yes. Aren't the fees for face-to-face classes more expensive than online classes?  Yes. So, in essence, we are making more money than we would normally on a class because it is remote.  Is there a need to charge that?  Or do we have authorization to charge that?  My provost said we aren't authorized to do that.").

ultimately decided against such refunds.[5]   FSU went as far as questioning the University of Florida's decision to offer reduced tuition and fees for the Summer 2020 Semester, indicating that the policy created a public relations issue for FSU because FSU would not be offering refunds or reduced tuition and fees for future semesters provided online.  During a March 24, 2020 CAFA conference call, FSU expressly stated that it was not refunding fees and proposed that all universities take the same position.  ¶¶ 77-79.

Moreover, FSU has acknowledged the implicit difference between in-person and online educational services.  Indeed, FSU has separate online-only degree programs called "Distance @FSU" and maintains a separate website for those programs.  ¶ 89.  Additionally, FSU charges different fees for tuition and services for its in-person College of Law than it does for its online law school.  ¶ 90.

## B.   Express Contract May Contain Ambiguous Covenants Even with Express Obligations

Defendants attempt to mischaracterize the nature of the contractual arrangement by muddling the use of "implied contract" and "express contract." While the case law is admittedly inconsistent in using the proper terminology, it is

---

[5]     Pursuant to Florida Statute Title XLVIII, Chapter 1011, a university may spend the minimum carryforward balance of seven (7) percent if a demonstrated emergency exists and the plan is approved by the university's board of trustees and the Board of Governors.  The transcripts reveal that the Board of Governors approved using the carryforward balance for housing and meal plan refunds if needed, and the universities did not even attempt to request use of the carryforward for tuition and fees.

critical to understand these terms to avoid falling into the confusion Defendants attempt to impose on the Court.

Here, Plaintiff unequivocally alleges the existence of an "express contract" between Plaintiff, who paid fees for tuition and other services to Defendants, and Defendants, who in turn were to provide educational services and access to on-campus facilities and amenities.  ¶ 3.  Various documents and websites further bolstered the express contract claim, as these sources explicitly stated that in order to use Defendants' campus, educational services, facilities, resources, and amenities, the students must pre-pay fee for tuition and related services. Notable examples of this include FSU's public website, which detailed the nature of fee pricing structures, documents provided through the registration, acceptance, and application process, the various bills sent to students for tuition and other services, and other correspondence regarding those payments, when they were due, how much was due, and to whom such payments or arrangements should be made.[6] ¶¶ 50, 54.  Therefore, an express contract exists between the parties for educational services and the use of on-campus facilities.

---

[6]     In fact, there are detailed processes by which students obtain student loans, log into the financial office websites, and accept or reject certain types of academic aide in connection with the state and government laws and regulations that are involved in these processes.  All of these are documents exist that speak to the express contract.

Instead, Defendants' argument should more appropriately be characterized as FSU insists that because there was no unambiguous "covenant" or "obligation" to provide on-campus and in-person educational services, there is no express contract at all.  This logic does not hold. The express contract exists between the parties: Plaintiff paid fees for tuition and access to campus services, and Defendants were to provide those on campus education and other services if Plaintiff paid the demanded fees.  At worst, the parties disagree as to the nature of those educational services. Defendants appear to contend that they owed no educational services aside from some base level instruction of any type they decided.[7]  Plaintiff instead alleges educational services included (i) traditional classroom-type instruction; (ii) access to campus and use of those facilities; and (iii) access to the in-person community of scholars, professors, librarians, technicians, and colleagues.  Defendants are complaining that there is no express covenant to provide the 2nd and 3rd type of educational services listed above – those that Plaintiff believes are at worst implied in that express contract.

This accords with Florida law that an express contract can exist, and the Court must interpret whether the covenants – whether clearly enunciated, vaguely stated, or otherwise – were adequately performed because of ambiguities in the nature of

---

[7]    Notably, Defendants' do not accept that they owed Plaintiff anything at all.  Suggesting, without conceding, that, at best, there exists an implied contractual relationship the parameters of which they do not explain.  MTD at 11.

the obligations on both sides.  "Under Florida law, contracts may be either express or implied in fact. […]   Express contracts may include implied terms. Thus, a contract may have legal effect beyond its actual words, resultant upon its wording and purpose and may embody obligations which legally are to be implied from its words and the relationship of the parties."  *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1340 (S.D. Fla. 1998); *Wilcox v. Atkins*, 213 So. 2d 879, 882 (Fla. 2d DCA 1968).  Contract terms implicit within an express agreement are as integral to the parties' agreement as the written or spoken terms -- "[e]very contract includes not only its written provisions, but also the terms and matters which, though not actually expressed, are implied by law, and these are as binding as the terms which are actually written or spoken."  *First Nationwide Bank v. Fla. Software Servs., Inc.*, 770 F. Supp. 1537, 1542 (M.D. Fla. 1991); *accord Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999); *Hall v Sargeant*, Case No. 18-80748-CIV-ALTMAN/Reinhart, 2020 U.S. Dist. LEXIS 54724 (S.D. Fla. Mar. 30, 2020).

The Complaint clearly and sufficiently alleges that Plaintiff and other members of the Class entered into binding contracts whereby Plaintiff and other members of the Class would pay fees for tuition and other services and, in exchange, would be provided in-person, on-campus educational services.  ¶ 3.  Defendants' promises were evidenced through, *inter alia*, FSU's website, enrollment process,

academic catalogs, student handbooks, correspondence, marketing materials, acceptance letters, online web portals, and other circulars, bulletins, and publications.  ¶ 119.  For example, FSU touted its residence halls as "the center of your collegiate life."  ¶ 102.  It also touted its "newly opened Innovation Hub in the heart of campus" as providing "access to all the latest technologies and staff support."  *Id.*  FSU promises that students will have access to "over 700 recognized student organizations" (*id.*) and quotes a student who states: "My extracurricular activities were essential to my undergraduate experience at Florida State – there is more to the collegiate experience than just academics."  ¶ 103.  In Plaintiff's acceptance letter, FSU promised "Florida State's clinical programs and location in Tallahasee provide students a plethora of options to gain legal experience" and "[a]s a Florida State law student, you also will have access to our outstanding faculty and the fabulous professionals in our Career Services and Professional Development Office[.]"  *See* Exhibit A to the Complaint.

In sum, this Court cannot conclude that no express contract existed between Defendants and Plaintiff because of the sheer volume of communications between them.  These communications, coupled with all the documentation, bolster the notion that an express contract did exist between these two parties.  Moreover, to dismiss this action, the Court, as a matter of law, must find that implied covenants in an express contract, of any type, are entirely unenforceable, which would be a

substantial and unjustified deviation from the established principles of Florida contract law.

As detailed herein, Plaintiff entered into an express contract with implied terms through the application, acceptance, and registration process for educational services.  ¶ 50. The corresponding documents of the application, acceptance, and registration process show an explicit contract as there was a clear offer to attend FSU's campus and clear acceptance by way of payments made to Defendants.  These documents also impliedly promise in-person and on-campus educational services and access to campus facilities in return for the payment of fees for tuition and these services. *Id.*

### C.    Plaintiff's Claims Are Not Barred By Florida Statutes

#### 1.    *Section 1009.24 of the Florida Statutes, Does Not Bar Plaintiff's Claim for Breach of Contract*

Defendants argue that Plaintiff cannot maintain his claims because Section 1009.24 of the Florida Statutes authorizes it to charge student fees but does not provide for a private right of action.  This argument is a red herring.  With respect to the claims associated with Section 1009.24, Plaintiff alleges that FSU breached its express contract with Plaintiff by failing to provide the in-person and on-campus services for which FSU charged Plaintiff fees for tuition and said services, and which Plaintiff paid.  As asserted in the Complaint, when enrolling at FSU, students are charged mandatory fees for various services.  Those fees include fees for athletics,

activities and services, campus health services, campus transportation, student facilities, FSU card, and technology.  ¶¶ 85-87.  Plaintiff performed the contract by paying fees for tuition and for FSU's educational services and campus resources, facilities, and amenities.  FSU breached its contract with Plaintiff when it failed to provide the various services for which Plaintiff paid.  The fact that the statute does not explicitly provide for a private right of action does not, in any way, prevent Plaintiff from pursuing an action for breach of contract.

A recent case with a similar allegation regarding fees is exactly on point.  In *Verdini*, 2021 Fla. Cir. LEXIS 4, at *2, the plaintiff brought a breach of contract claim against Miami-Dade College for fees paid for services not provided to the students after the school unilaterally decided to transition to online learning as its response to COVID-19.  Specifically, the plaintiff alleged that there was "an express, written agreement between [p]laintiff and [Miami-Dade College] to provide specific services authorized by the Florida statutes in exchange for the payment of fees." *Id.* The court agreed with the plaintiff and denied the defendant's motion to dismiss, holding that an express contract was formed between the plaintiff and the defendant whereby the defendant was contractually obligated to provide services in exchange for the plaintiff's payment of fees. *Id.* (citing *Waite Development, Inc.* 866 So. 3d at 155 (reversing order dismissing a claim against City based on sovereign immunity defense finding that "[s]everal writings may constitute a valid and binding written

contract when they evidence a complete meeting of the minds of the parties and an agreement upon the terms and conditions of the contract.").

In other words, the statute authorizes FSU to charge students fees for tuition and other services, and based on that authorization, FSU formed an express contract with Plaintiff for the provision of specific services in return for the payment of those fees. That Section 1009.24 does not provide for a private right of action is of no moment. Plaintiff indisputably has a right to bring an action for breach of express contract, which he has done here.[8] *See supra* Sections I.A.1, I.B.

Nor does Section 1009.24 need to contain any "language waiving sovereign immunity for claims arising from the payment of tuition and fees." MTD at 21. For the same reasons outlined in Section I.A.1 *supra*, Defendants cannot hide behind a sovereign immunity defense when, as here, an express contract exists. *Champagne-Webber*, 519 So. 2d at 698 ("the defense of sovereign immunity does not protect the

---

[8]     Defendants suggest, without entirely arguing, in a footnote that Fla. Stat. § 768.39 serves as a bar to Plaintiff's claim. MTD at 21. Defendant stops short of relying on Fla Stat. § 768.39 with good reason because § 768.39 does not apply. First, as Defendants implicitly recognize, the statute cannot be applied retroactively to the instant suit. While Defendants state that the "retrospective-looking language" of the statute indicates that the law was meant to apply retrospectively, Defendants' own cited authority makes clear that only "[i]f the legislation clearly expresses an intent that it applies retroactively, then the second inquiry is whether retroactive application is constitutionally permissible." *Metro. Dade Cty v. Chase Fed. Housing Corp.*, 737 So. 2d 494, 499 (Fla. 1999) (internal citations omitted). Moreover, even if Defendants could point to a clearly expressed intent by the Legislature for retroactive application, the law would still unconstitutionally impair Plaintiff's "sacrosanct" right to contract. *See Chiles v. United Faculty of Fla.*, 615 So. 2d 671, 673 (Fla. 1993); *Pudlit 2 Joint Venture, LLP v. Westwood Gardens Homeowners Ass'n, Inc.*, 169 So. 3d 145, 150 (Fla. Dist. Ct. App. 2015) (citation omitted) (It is a "well-accepted principle that virtually no degree of contract impairment is tolerable."); *see* Art. I, §10, Fla. Const.

state agency from an action arising out of a breach of either an express or implied covenant or condition of that contract."); *Verdini*, 2021 Fla. Cir. LEXIS 4, at *3-4 (Plaintiff has sufficiently stated a cause of action for breach of an express contract. Therefore, at the motion to dismiss stage, sovereign immunity is no bar to Plaintiff's well-pleaded breach of contract claim").

## II.   FEDERAL AND STATE "TAKINGS" CLAIMS ARE VALID, AND THE STUDENTS HAVE A PROTECTED PROPERTY INTEREST

Plaintiff and members of the proposed Class pre-paid fees for tuition and other services to FSU to receive in-person and on-campus education and access to campus facilities.  ¶ 3. The funds paid by Plaintiff were held in an account on his behalf specifically for that purpose.  ¶ 149.  In mid-Spring 2020, when Defendants closed the campus and ceased in-person education, Defendants committed an unconstitutional taking of (i) Plaintiff and members of the putative Class's funds and (ii) protected property interest in ongoing education and services.  ¶¶ 157-158. Defendant mischaracterizes Plaintiff's Federal Takings claim, arguing that the claim is brought under 42 U.S.C. § 1983.  MTD at 16.  This is incorrect.  Plaintiff's takings claim is self-executing, without reliance upon § 1983.  Defendants' argument against inverse condemnation is also flawed.  Plaintiff has sufficiently pleaded allegations, when taken as true, that show that he and the putative Class have a protected property interest in the funds paid for contracted for services, as well as the ongoing

contractual services throughout the entirety of the semester and that such property

interests were wrongfully and unlawfully taken.

### A.   Plaintiff's Property Interest in Tuition and Fees Paid to Defendants

To state a Takings claim, Plaintiff must show that he possesses a

constitutionally protected property interest.   *Givens v. Alabama Dep't. of*

*Corrections,* 381 F.3d 1064 (11th Cir. 2004).   In this stage, under the *Twombly/Iqbal*

standard, Plaintiff has satisfied his burden.   Under common law, an individual has

property rights to funds they own held in an account managed by another.   *See, e.g.,*

*Larance v. Bayh*, Cause No. 3:94-CV-182RM, 1995 WL 46718, at *1 (N.D. Ind.

1995) (holding prisoners have a property interest in their personal funds, including

wages, held in trust during the period of their incarceration); *Phillips v. Washington*

*Legal Found.*, 524 U.S. 156 (1998) (held interest income generated by funds held in

IOLTA accounts is private property of owner of principal for purposes of Takings

Clause).   Here, Plaintiff, a private citizen, has given FSU, a public entity, fees for

tuition and other services and access in exchange for Plaintiff's ability to attend,

participate, and utilize FSU's educational amenities and campus facilities.

Defendants argue that this payment of fees is not a property interest possessed by

the Plaintiff (MTD at 23-24); however, Defendants ignore the requirements of the

Higher Education Act of 1965 ("HEA")[9], and incorrectly frame its argument as if Plaintiff received all that he pre-paid for.  This is not the case. The HEA requires an institution, such as Defendants, to be able to separately account for student payments as well as financial aid received on a student's behalf.[10]  The institution is responsible for holding those funds for the student during the enrollment period to be used for the student's expenses; however, if a student withdraws during that enrollment period, the institution must refund a specific portion of the charges to the account for the reduced education obligation on the student.  Thus, because Plaintiff gave his funds to Defendant in the form of fees for tuition and other services, and because the HEA obligates Defendant to account for and hold those funds for Plaintiff and return the same upon withdrawal, Plaintiff has a property interest to all sums paid to Defendants, and that sum was unlawfully taken when Defendants ceased to provide the in-person education and on-campus services.  ¶ 157.

### B.   <u>Plaintiff's Property Interest in Promised Educational Services</u>

An individual has a protected property interest in a government benefit when he has "a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The claim of entitlement must come from an

---

[9]     *See* 20 U.S.C. §§ 1070-1099 (1990 & 1992 Supp.).

[10]     This would also be done in the ordinary course of business, as Defendants issues invoices and have student accounts for tuition and fees.  Plaintiff intends to show, through discovery, how these accounts are sequestered.

independent source. *Id*. ("Property interests . . . are not created by the Constitution . . . [but] by existing rules or understandings that stem from an independent source. . ."); *Perry v. Sindermann*, 408 U.S. 593 (1972). The independent source can be a statute, a regulation, an express or implied contract, a mutually explicit understanding, or an individual has property rights in their ongoing education. *See Childers v. Fla. Gulf Coast Univ. Bd. of Trs*., No. 2:15-cv-722-FtM-MRM, 2017 U.S. Dist. LEXIS 48522, *23 (M.D. Fla. Mar. 31, 2017); *Barnes v. Zaccari,* 669 F.3d 1295, 1304-05 (11th Cir. 2012).

As stated above, *supra* Section I.B., Plaintiff entered into a contractual relationship with Defendants where Plaintiff would pay Defendants fees for tuition and other services in exchange for Defendants to provide in-person learning and use of Defendants' campus facilities and amenities.  Plaintiff and the putative Class members had a constitutionally protected property interest in such learning, facilities, and amenities. *See Childers*, 2017 U.S. Dist. LEXIS 48522, at *5. Midway through the Spring 2020 semester, Defendants ceased providing Plaintiff and others what was contracted for, and instead offered remote distance learning and the closure of facilities and amenities.  As a result of Defendants' conduct, Plaintiff's property interest in ongoing services contracted for were taken.  ¶ 158. Therefore, Plaintiff sufficiently pleaded a cause of action under inverse condemnation, which is enough on a motion to dismiss.

**III.     THE VOLUNTARY PAYMENT DOCTRINE IS AN AFFIRMATIVE DEFENSE INAPPROPRIATE FOR A MOTION TO DISMISS**

Defendants argue that Plaintiff's breach of contract claim should be dismissed because the "voluntary payment doctrine" bars a claim for breach of contract if a party makes a voluntary payment with knowledge of the facts of the payment.  MTD at 29-31.  At the outset, this doctrine is clearly not applicable because at the time Plaintiff and the putative Class's tuition payments were due, they *did not* have "full knowledge of all the facts," such as the "fact" that the University could unilaterally and fundamentally reduce the services, in-person instruction and access to campus facilities the students were entitled to receive, both with no notice and no recourse.

However, the Court need not consider the "voluntary payment doctrine" at this stage of the litigation.  Under Florida law, it is well-settled that "the voluntary payment doctrine is an affirmative defense that may not be raised on a motion to dismiss, as it entails a fact-based inquiry not suited for resolution on a Rule 212(b)(6) motion."  *Maor v. Dollar Thrifty Auto. Grp.*, 303 F. Supp. 3d 1320, 1326 (S.D. Fla. 2017); *Schojan v. Papa John's Intl Inc.*, 34 F. Supp. 3d 1206, 1210-11 (M.D. Fla. 2014) (same); *Liberty Surplus Ins. Corp. v. First Indem. Ins. Servs.*, 31 So. 3d 852, 858 (Fla. 4th DCA 2010) (citing *Pac. Mut. Life. Ins. Co. of Cal. V. McCaskill*, 170 So. 579, 583 (Fla. 1936)).  Accordingly, since the instant motion is, in fact, a motion to dismiss, the "voluntary payment doctrine"—the applicability of which Plaintiff disputes—cannot be a basis for dismissing Plaintiff's claims.

26

## IV.     CLASS CLAIMS SHOULD NOT BE DISMISSED

Defendants seek dismissal of Plaintiff's class claims as moot because Plaintiffs have not stated any viable claims in their individual capacities. MTD at 32-33. But, as set forth above, Plaintiff has pleaded viable claims for breach of contract, unjust enrichment, takings claim, and a claim for inverse condemnation. Nor has any discovery been conducted in this case. Accordingly, striking Plaintiff's class claims on the pleadings alone would be premature. *See Herrera v. JFK Medical Center Ltd. Partnership*, 648 F. App'x 930, 934 (11th Cir. 2016) ("the Supreme Court has emphasized that class certification is an evidentiary issue, and 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'") (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).

## V.     CONCLUSION

The Motion to Dismiss should be denied in its entirety. If any allegation is lacking in the Complaint, Plaintiff should be given leave to amend as this is the first time a judicial officer has reviewed the Complaint.

Dated: September 24, 2021

> **EGGNATZ PASCUCCI PA**
>
> By: /s/ *Joshua H. Eggnatz*
> **JOSHUA H. EGGNATZ**
> Fla. Bar No.: 0067926
> 7450 Griffin Rd., Suite 230
> Davie, FL 33328
> Telephone: (954) 889-3359
> Email: jeggnatz@justiceearned.com
>
> *Local Counsel for Plaintiff*
>
> /s/ *Gregory M. Egleston*
> **GREGORY M. EGLESTON**
> **(Admitted PHV)**
>
> **GAINEY MCKENNA & EGLESTON**
> 501 Fifth Ave., 19th Floor
> New York, NY 10017
> Telephone: (212) 983-1300
> Email: egleston@gme-law.com
>
> *Counsel for Plaintiff*

## <u>WORD COUNT CERTIFICATION</u>

The undersigned certifies that this document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F), as it contains 6,683 words which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

<u>/s/ *Joshua H. Eggnatz*</u>
**JOSHUA H. EGGNATZ**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 24th day of September, 2021, a true and correct copy of the foregoing was electronically filed in the United States District Court, Northern District of Florida, using CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Joshua H. Eggnatz*
**JOSHUA H. EGGNATZ**
